NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0301n.06

No. 09-6313

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Mar 16, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MICHAEL T. PARDUE,

    Defendant-Appellant.

)
)
)
)
) ON APPEAL FROM THE
) UNITED STATES DISTRICT
) COURT FOR THE EASTERN
) DISTRICT OF TENNESSEE
)
)

Before:     **KEITH, GRIFFIN, and STRANCH, Circuit Judges.**

**Per Curiam.** Defendant-Appellant Michael Pardue was found guilty of possession, with intent to defraud, of counterfeit United States currency in violation of 18 U.S.C. § 472. The district court sentenced Pardue to twenty-seven months' imprisonment, followed by three years of supervised release. Pardue timely appealed the sentence. For the following reasons, we **AFFIRM** the district court.

**I.**

On December 15, 2008, an employee of the Raceway gas station in Whitwell, Tennessee notified the Whitwell Police Department that an individual had just attempted to pass a counterfeit $100 bill. Based on a description that the employee provided, police officers arrested Linda Sneed, Shirley Meroney, and Pardue later that day.

Meroney identified herself as Pardue's girlfriend and Sneed's sister. Meroney stated that Pardue gave Sneed the counterfeit $100 bill that Sneed had attempted to use at Raceway earlier that

day.  Pardue admitted that he had, in fact, given Sneed the counterfeit bill.  He stated that he had possessed six other counterfeit $100 bills earlier that day, but had flushed them down the toilet.  He stated that, one month earlier, he had purchased a printer and used it to print counterfeit $20 bills on bleached $1 bills and counterfeit $50 and $100 bills on bleached $5 bills.  According to Pardue, he had successfully passed $1,600 in counterfeit $100 bills in various cities in Tennessee and Florida.

Pardue was indicted on one count of possession, with intent to defraud, of counterfeit United States currency in violation of 18 U.S.C. § 472.  He pled guilty on March 9, 2010, without the benefit of a plea agreement.

The United States Probation Officer prepared a Presentence Report ("PSR") using the United States Sentencing Guidelines ("Guidelines").  The PSR stated that Pardue had a total offense level of nine and twenty  criminal history points, yielding a Guidelines range of twenty-one to twenty-seven months' imprisonment.  Given Pardue's conviction for violating § 472, the probation officer began with an offense level of seven.  Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), the parole officer then increased the offense level by two because the offense involved ten or more victims.  (The PSR lists more than ten businesses in the Chattanooga, Tennessee area alone where Pardue passed counterfeit bills.)  Then, pursuant to U.S.S.G. § 3B1.1(c), the probation officer added two more levels for Pardue's role in the offense, observing that Pardue manufactured the counterfeit notes and gave them to Sneed and  Meroney to pass at local stores.  Finally, the officer reduced the offense level by two points due to  Pardue's acceptance of responsibility. Thus,  Pardue's total offense level was nine.

The probation officer found that Pardue's criminal history yielded eighteen criminal history points. The officer then added two points because Pardue committed the instant offense less than two years after his release from custody for another criminal offense. Thus, Pardue's criminal history yielded twenty points, placing him in criminal history category VI, the category for offenders with thirteen or more criminal history points. Taken together, Pardue's offense level (nine) and criminal history points (twenty) yielded an advisory range of twenty-one to twenty-seven months' imprisonment.

At the sentencing hearing, the district court heard argument from the prosecutor, counsel for Pardue, and Pardue himself. The Government presented testimony from Secret Service Agent Darren Earle, who interviewed Pardue, Sneed, and Meroney after their arrests. The defense presented a letter from Bill W. Smith, Chaplain of the Hamilton County Jail where Pardue had spent the previous ten months. Chaplain Smith professed to have observed great changes in Pardue's character, and urged the district court to render a charitable sentence. The defense also lodged its objections to the calculation of Pardue's criminal history category (based on what it argued was the improper counting of certain offenses as separate rather than continuous) and the two-level adjustment for Pardue's role in the offense.

Upon considering the evidence, the factors in 18 U.S.C. § 3553, Pardue's background and characteristics, and the nature and circumstances of the offense, the court sentenced Pardue to twenty-seven months' imprisonment.

**II.**

3

We review a defendant's sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007); *see also United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). A district court abuses its discretion if it imposes a sentence that is either procedurally or substantively unreasonable. *Gall*, 551 U.S. at 51. "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (internal quotation marks and citation omitted). A sentence may be "substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* (internal quotation marks, alterations, and citation omitted). On appeal, sentences within the Guidelines range are afforded a rebuttable presumption of reasonableness. *United States v. Bailey*, 488 F.3d 363, 368 (6th Cir. 2007).

**III.**

Pardue argues that the district court: (a) miscalculated his criminal history, rendering the sentence procedurally unreasonable; (b) improperly imposed a two-level upward adjustment for his role in the offense, rendering the sentence procedurally unreasonable; and (c) improperly weighed the relevant factors and then imposed the maximum sentence, rendering his sentence substantively unreasonable. We address each argument in turn.

**A. Calculation of Pardue's Criminal History**

4

In this case, the district court found that Pardue's prior convictions yielded eighteen criminal history points. The court then added two additional points because the instant offense occurred less than two years after Pardue's release from prison. A sentence is procedurally unreasonable if the district court improperly calculated the guidelines range (for which the offense level may be determinative). *See Gall*, 552 U.S. at 51. Thus, if improperly calculated, Pardue's sentence would suffer from procedural error.

Pardue argues that the court's initial calculation of eighteen criminal history points was incorrect, resulting in procedural error. Specifically, he objects to the calculation of separate criminal history points for a driving under the influence conviction in 2005 and a drug conviction in 2006, both of which stemmed from events occurring on December 7, 2005, when Pardue was arrested for driving under the influence of alcohol and driving on a revoked license. Pardue was searched incident to that arrest, and was found to be in possession of marijuana. For reasons we do not know, Pardue was not arrested for possession of marijuana until December 15, 2005. Pardue pled guilty to the driving offenses on December 12, 2005 and to possession of marijuana on April 4, 2006. Pardue argues that the driving and drug offenses constitute one continuous incident, and the district court thus erred in treating them as two distinct convictions when calculating his criminal history.

The Guidelines provide that, when calculating criminal history, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2(a)(2). An intervening arrest occurs where the defendant is arrested for the first offense prior to committing the second offense. *Id.* Absent an intervening arrest, prior

5

sentences are counted separately unless they resulted from offenses contained in the same charging instrument or were imposed on the same day. *Id.* In this case, Pardue's marijuana possession was discovered during a search incident to his arrest for driving under the influence. Thus, Pardue was not "arrested for the [driving] offense prior to committing the [possession] offense." *Id.* However, we need not delve into the charging instruments or docket: Even if the offenses had been treated as one instead of two, it would not have affected Pardue's criminal history category of VI, which is triggered by thirteen or more criminal history points. When the arrests are counted as separate incidents, Pardue has twenty criminal history points, and when they are counted as a single incident, Pardue has nineteen. Under either calculation, the Guidelines propose the same sentencing range. Because the separation of Pardue's two earlier offenses made no difference to Pardue's Guidelines range, any error that may have occurred was harmless. *See United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998). In light of these facts, we conclude that the district court did not abuse its discretion.

## B. The Two-Level Upward Adjustment

The district court applied a two-point enhancement to Pardue's offense level because it deemed Pardue to be "an organizer, leader, manager, or supervisor" in criminal activity that did not involve five or more participants and was not otherwise extensive. U.S.S.G. § 3B1.1. As noted above, if improperly calculated, Pardue's sentence would suffer from procedural error.

Pardue argues that this was a procedural error for three reasons. First, the Government's proof in support of the two-level adjustment was primarily the testimony of Agent Earle, who interviewed Pardue, Sneed, and Meroney while investigating their roles in the offense. Pardue

6

asserts that such evidence is inherently incredible because the interviewees were detained and "not free to leave." Second, Pardue "at no time forced any individuals to engage in any criminal conduct." Third, each of the participants "very much benefitted" from the criminal conduct, not just Pardue.

Pardue's argument that the district court improperly relied upon Agent Earle's testimony is unavailing. As finder of fact, the district court was free to credit Agent Earle's testimony. Agent Earle described Pardue's process of obtaining genuine currency, obtaining equipment to create counterfeit currency, bleaching and reprinting currency, and attempting to pass it. More specifically, Agent Earle testified that Sneed told him that Pardue gave her counterfeit $100 bills and said that, if she could successfully pass the bills in commerce, she could keep $20 from the change. He also testified that Meroney said Pardue sent her to a grocery store on three occasions to obtain $5 bills that he could bleach and reprint in higher denominations. Finally, Agent Earle further stated that Meroney told him the enterprise was Pardue's plan.

Pardue's argument that he was not a leader because he neither forced others to participate nor enjoyed the sole benefits of the criminal enterprise is similarly unpersuasive. The Guidelines provide that, "[i]f the defendant was an organizer, leader, manager, or supervisor" in any criminal activity that involved fewer than five participants or was not otherwise extensive, the offense level may be increased by two levels. U.S.S.G. § 3B1.1. Application Note 4 provides additional guidance as to who is a leader, organizer, manager, or supervisor. It states in relevant part:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree

7

of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree and scope of authority exercised over others.

*Id.* at n.4. The Guidelines do not mention whether the defendant forced the participants to act, or whether the participants benefitted from their actions. We decline to read factors into the Guidelines that do not appear in the text.

Furthermore, in keeping with the Guidelines' application notes, we have previously advised that, in order to enhance a sentence under § 3B1.1, the district court should first make a factual finding that the defendant supervised at least one person. *See United States v. Ward*, 506 F.3d 468, 476 (6th Cir. 2007); *see also* U.S.S.G. § 3B1.1 n.2. In *Ward*, where the defendant had, on twenty occasions, directed another person to make crack cocaine deliveries on his behalf, this Court stated it was "implausible" that the defendant "was not exercising some degree of control" over his courier. *Id.* Thus, the enhancement was proper. *Id.*

In the instant case, the district court appears to have made the advised factual findings. Agent Earle testified that Sneed told him Pardue "directed" her to pass the counterfeit bill that resulted in her (and Pardue's) arrest. Additionally, according to Agent Earle's testimony, Meroney stated that she and Pardue had been passing counterfeit currency "for approximately a month" prior to the arrest, that it was Pardue's "plan," and that he was primarily responsible for producing the counterfeit bills. The district court summarized Agent Earle's testimony as demonstrating that Pardue "came up with the idea, . . . set it in motion, . . . claimed a right to a larger share of the fruits of the crime, . . . recruited others to participate, and [had] some degree of control and authority over [Sneed and Meroney]." Based on the record before us, and particularly in light of the Guidelines' application notes, we believe that the district court reasonably concluded that Pardue organized, led,

managed, or supervised the crime. It therefore reasonably applied the enhancement and there was no abuse of discretion.

## C. Imposition of the Maximum Advised Sentence

The district court imposed a sentence at the top of the advisory range. Pardue argues that this sentence is substantively unreasonable. He asserts that, given his efforts to turn his life around and accept responsibility for his actions, as well as the "relative lack of pecuniary loss" resulting from his offense, the district court must have given unequal weight to the relevant sentencing factors or it would have rendered a more lenient sentence.

While a sentence may be substantively unreasonable if the district court gives unreasonable weight to a particular factor, *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005), a sentence within the properly calculated Guidelines range is afforded a rebuttable presumption of reasonableness, *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). The defendant bears the burden of rebutting that presumption on appeal. *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009).

Pardue has not shown that the district court weighed the sentencing factors in an unreasonable manner. As an initial matter, we presume that the district court reviewed all of the information provided by Pardue, the Government, and the probation officer before it imposed a sentence. *See United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006) (absent evidence to the contrary, sentencing court presumed to have reviewed and considered all materials presented to it).

What is more, at the sentencing hearing, the district court heard live testimony; reviewed aspects of the PSR on the record; read a letter in support of Pardue into the record; discussed the importance of deterrence and protecting the integrity of United States currency; discussed Pardue's criminal history at length; discussed the nature and circumstances of the offense; discussed its hope that Pardue would continue to transform into a "different person," i.e., one who did not commit crimes; and considered the statements of Pardue, his counsel, and the prosecutor. This is sufficient to show that the district court properly weighed the relevant factors and did not abuse its discretion by imposing a within-range sentence. *See, e.g., Ward*, 506 F.3d at 478 (the district court "carefully considered and prudently balanced the various factors in arriving at the sentence" where it reviewed many aspects of the PSR on the record, heard live testimony, allowed the entry of letters addressed to the court, and considered statements of the defendant, defendant's counsel, and the prosecution).

## IV.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in sentencing Pardue to twenty-seven months' imprisonment followed by three years of supervised release. The judgment of the district court is **AFFIRMED**.