NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0108n.06

Case No. 19-1462

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Feb 19, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MARTIN LUTHER DUKES, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Martin Dukes pleaded guilty after participating in a large-scale drug distribution scheme. He now challenges his sixty-three-month sentence. He argues that the district court erred in (1) calculating the drug quantity attributable to him and (2) holding him accountable for a co-conspirator's actions. Dukes also claims the government presented insufficient evidence to support the district court's ruling.

But that's not the case. The district court relied on the record to determine the quantity of drugs involved in the conspiracy that Dukes could have reasonably foreseen. Evidence shows Dukes knew that the conspiracy's leader, Howard Mayfield, obtained cocaine as part of the conspiracy. Because we hold criminal defendants accountable for foreseeable actions of their co-conspirators within the scope of the criminal agreement, the district court did not err by finding Dukes responsible for drugs Mayfield handled. And a preponderance of the evidence supports that

Dukes knew of at least 14.57 kilograms bought or transported to further the conspiracy. So we AFFIRM.

I.

Dukes participated in a conspiracy to distribute cocaine and crack cocaine. The indictment named many defendants allegedly involved in a Michigan-based drug trafficking scheme. Various law enforcement agencies worked together to uncover the organized drug distribution. And they used a wide array of investigative methods, including wiretapping, controlled buys, confidential informants, GPS tracking, and surveillance. Howard Mayfield spearheaded the conspiracy, recruiting and directing participants while taking in a considerable share of the profits. At first, Mayfield worked with Wilbert Gentry to obtain large amounts of cocaine (over 100 kilograms) from the Sinaloa Cartel in Mexico to distribute stateside. After falling out with Gentry, Mayfield turned to Quincy Lofton and Craig James for a new supply. To secure drugs for the distribution scheme, Mayfield often traveled to Texas and Tennessee. All the while, Mayfield kept in close contact with Dukes.

Dukes and Mayfield have a close, longstanding relationship. They are longtime friends, having known each other for over thirty-five years. Throughout the conspiracy, Dukes and Mayfield spoke "daily . . . on a variety of topics." (R. 700, Sentencing Tr., PageID # 3659.) And Dukes bought cocaine from Mayfield, both to deal and for personal use. While Dukes neither traveled with Mayfield nor executed large-scale drug transactions, he remained Mayfield's confidant during the conspiracy. Mayfield also sold cocaine at Dukes's house and sought help from Dukes to process shipments of cocaine. In brief, Dukes acted as Mayfield's "right-hand man." (R. 614, Presentence R., PageID # 2256.)

In his plea agreement, Dukes admitted to entering a conspiracy with Mayfield and others to possess and distribute cocaine with the intent that it would be distributed. He also confirmed that he "understood and intended to join in the conspiracy to possess and distribute controlled substances." (R. 365, Plea Agreement, PageID # 908.) But after reviewing the initial presentence report, Dukes objected to being characterized as Mayfield's close associate and thought he should have received a lesser recommended sentence because he did not "plan, coordinate, or direct" Mayfield's acquisitions of drugs. (R. 610, Dukes's Obj., PageID # 2122.) These objections proved unsuccessful. The district court adopted the presentence report, holding Dukes responsible for 1.57 kilograms of cocaine that he bought and thirteen kilograms of cocaine that Mayfield transported into Michigan. And the court echoed the presentence report by remarking that Dukes received an "extremely conservative" sentence considering his close relationship with Mayfield. (R. 700, Sentencing Tr., PageID # 3668; R. 614, Presentence R., PageID # 2284.)

At sentencing, Dukes reiterated these concerns about the drug quantity for which he was held responsible. Although Dukes admitted some knowledge of Mayfield's drug acquisitions, he disputed that he knew enough to be held responsible for thirteen kilograms of cocaine that Mayfield handled. During the hearing, the government produced a phone call reflecting Dukes's knowledge of Mayfield's drug trafficking trips and his concern that the arrest of a drug courier (who was carrying eight kilograms of cocaine) might trigger a federal investigation. The government also relied on evidence that Dukes communicated with Mayfield during another trip Mayfield took to Texas to pick up five more kilograms of cocaine. The district court sided with the government, finding Dukes responsible for 14.57 kilograms of cocaine as recommended by the final presentence report. The court sentenced Dukes to sixty-three months, which was on the lower

end of the Guidelines range. He now challenges the district court's decision to sentence him based on cocaine obtained and transported by Mayfield.

II.

Dukes asserts two errors. First, he argues that he isn't liable for drugs Mayfield possessed because Mayfield's criminal activity was not reasonably foreseeable to him and it was outside the scope of Dukes's criminal agreement. Second, he claims that the district court's finding that the conspiracy involved 14.57 kilograms, at least in relation to Dukes, isn't supported by a preponderance of the evidence.

We review a district court's findings on the foreseeability of criminal activity of a co-conspirator for clear error. *United States v. Tocco*, 306 F.3d 279, 284 (6th Cir. 2002). And we also review the quantity of drugs used to calculate a defendant's sentence for clear error. *United States v. Charles*, 138 F.3d 257, 267 (6th Cir. 1998). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tocco*, 306 F.3d at 284 (quoting *Charles*, 138 F.3d at 262). But we determine the relevance of the conduct to the conspiracy de novo. *Id.*

Dukes pleaded guilty to the conspiracy and is thus liable for the actions of his co-conspirators, including Mayfield, for conduct that "was reasonably foreseeable to [Dukes] and in furtherance of the execution of the jointly undertaken criminal activity." *United States v. Jenkins*, 4 F.3d 1338, 1346 (6th Cir. 1993). So Dukes isn't liable for all of the contraband involved in the distribution scheme. Just the cocaine that (1) he knew about or was reasonably foreseeable to him, and (2) was within the scope of his criminal agreement. *See United States v. Campbell*, 279 F.3d 392, 399–400 (6th Cir. 2002).

In this analysis, foreseeability must rise beyond "know[ing] that every transaction requires an extensive network of importers and distributors handling large quantities." *Jenkins*, 4 F.3d at 1346 (quoting Stephen J. Schulhofer, *Excessive Uniformity-And How to Fix It*, 5 FED. SENT'G REP. 169, 170 (1992)). That means we need to "differentiate between [Dukes] and other members of the . . . conspiracy." *Id.* at 1347. Yet we have imposed liability when a defendant knew about: (1) the drug scheme's leadership; (2) particular instances of obtaining and selling drugs; (3) the potential for being caught by a government investigation; (4) the methods of creating drugs; and (5) actions taken by other drug dealers in the conspiracy. *See United States v. Young*, 847 F.3d 328, 367–68 (6th Cir. 2017).

Dukes contends that the lower court erred "because it failed to make particularized findings regarding both that the quantities of drugs delivered to Michigan through Mayfield were reasonably foreseeable to [Dukes] and that the shipments were in furtherance of the joint criminal activity to which Mr. Dukes agreed." (Appellant Br. at 20.) To make this point, Dukes claims the phone calls between him and Mayfield did not show Dukes knew that Mayfield transported drugs for future distribution. That's because Dukes allegedly "minimally participat[ed]" in discussing the drug scheme and that Dukes and Mayfield "discuss[ed] . . . many other legal and harmless matters common to all close friendships." (Appellant Br. at 24–25.) For instance, he describes their typical conversation as "Mr. Mayfield saying yap, yap, yap, yap, and Mr. Dukes [responding] uh-huh, uh-huh . . . and then there is a little bit of interaction." (R. 700, Sentencing Tr. at PageID # 3664.) Further addressing the phone calls, Dukes claims that "knowledge [about the drugs] alone does not amount to reasonable foreseeability to be on the hook for that quantity." (*Id.* at 3657.) That is true. *Campbell*, 279 F.3d at 400. But the conversations between Dukes and Mayfield

introduced at sentencing show that such quantities were foreseeable and within the scope of Dukes's agreement.

First, Dukes admitted that he knew Mayfield acquired between five and fifteen kilograms of cocaine. Considering Dukes's role as Mayfield's "right-hand man in the drug trafficking conspiracy," Dukes could have reasonably foreseen that Mayfield would use the drugs in the conspiracy. (R. 614, Presentence R., PageID # 2260, 2268.) And the two often communicated, discussing subjects like Mayfield's obtaining drugs, manufacturing drugs, and a potential federal investigation. Likewise, it is apparent enough from the evidence introduced at sentencing that distribution of at least 13 kilograms of cocaine fell under Dukes's criminal agreement. Dukes and Mayfield discussed the co-conspirator who was arrested with eight kilograms of cocaine and the record reflects that Dukes helped Mayfield sell and process shipments of cocaine. So the evidence supports the inference that Dukes likely knew about and agreed to participate in a drug trafficking scheme, and took specific actions in furtherance of that scheme. Similar knowledge and agreement provided ample ground to uphold co-conspiracy liability in *Young*.

What's more, the district court judge gave Dukes an "extremely conservative" sentence because he considered only "actual conversations between [Dukes] and Mr. Mayfield showing [Dukes's] knowledge[.]" (R. 700, Sentencing Tr. at PageID # 3668.) So the district court (1) differentiated Dukes from other co-conspirators by relying on his conversations and (2) cited ample evidence showing Dukes knew about, and agreed to participate in a conspiracy to distribute, the cocaine at issue. And Dukes still knew Mayfield acquired and transported cocaine, even if Mayfield did most of the talking during their phone calls. As a result, the district court did not err by holding Dukes responsible for cocaine Mayfield obtained and transported.

III.

Because Dukes is liable for the cocaine he knew Mayfield obtained and that was part of his criminal agreement, the only question remaining is whether a preponderance of the evidence supported the ultimate quantity of drugs used to calculate Dukes's sentence. The district court held him responsible for 14.57 kilograms of cocaine—1.57 kilograms handled by Dukes and thirteen kilograms bought and transported by Mayfield. But Dukes believes it did so without sufficient evidence.

The quantity of drugs on which a sentence is based must be supported by a preponderance of the evidence. *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). We permit estimated drug quantities, so long as the district court erred on the side of caution. *Id.* In sum, the quantity of drugs supporting a sentence must reflect "a minimal level of reliability beyond mere allegation." *United States v. West*, 948 F.2d 1042, 1045 (6th Cir. 1991).

Dukes claims the district court held him responsible for 14.57 kilograms of cocaine without sufficient evidence. He rightly points out the district court lacked physical evidence tying him to thirteen of those kilograms. In short, he contends the district court sentenced him based only on speculation. Yet Dukes's position omits key record details.

First, Dukes admitted that he knew Mayfield obtained up to fifteen kilograms of cocaine to use in the conspiracy. Based on that alone, Dukes arguably knew about at least thirteen kilograms of cocaine that Mayfield obtained for criminal purposes. But there's more. The record reflects many discussions between Mayfield and Dukes regarding quantities of cocaine used in the conspiracy. Yet Dukes is only being held responsible for two shipments of drugs that Mayfield executed, one for five kilograms and one for eight kilograms. And the district court relied on reports that Dukes and Mayfield communicated during these shipments. Far from speculative, the

evidence implicating Dukes shows that he likely knew about a large amount of cocaine obtained and transported by Mayfield. So we are satisfied the lower court did not clearly err in determining the quantity of drugs for sentencing Dukes. After all, it only needed to find it more likely than not that Dukes was tied to 14.57 kilograms of cocaine.

IV.

Our precedent permits imposing liability based on the actions of co-conspirators. Dukes knew of the cocaine Mayfield possessed and intended to distribute. So he could have reasonably foreseen that cocaine's use in the conspiracy. Sufficient evidence shows Dukes knew about at least thirteen kilograms of cocaine obtained by Mayfield on top of the 1.57 kilograms he possessed. Thus, both of Dukes's arguments fall short. We AFFIRM.