**UNITED STATES of America (93–5156), Plaintiff–Appellee, Cross–Appellant,**

v.

**Jeffrey Otis PETERS (93–5153) and Marisha Lynn Winton (93–5154), Defendants–Appellants, Cross–Appellees.**

Nos. 93–5153, 93–5154 and 93–5156.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1993.

Decided Jan. 27, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied in Nos. 93–5153, 93–5156, March 29, 1994.

---

7. Henry Warda was born on April 18, 1934. He was over 21 years of age when his grandfather's estate was closed on July 11, 1955.

Gary Humble, Asst. U.S. Atty. (argued and briefed), Chattanooga, TN, for U.S.

Thomas J. Wright (argued and briefed), Greeneville, TN, for Jeffrey Otis Peters.

Ashley L. Ownby (argued and briefed), Cleveland, TN, for Marisha Lynn Winton.

Before: MARTIN and RYAN, Circuit Judges; and MATIA, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

Jeffrey Otis Peters and Marisha Lynn Winton appeal, on numerous grounds, their convictions for conspiracy to possess crack cocaine with the intent to distribute and possession of crack cocaine with the intent to distribute. The United States, in turn, appeals the sentences imposed on both defendants, claiming that the district court erred in calculating the defendants' adjusted offense levels under Section 2D1.1(b)(1) of the Sentencing Guidelines. For the following reasons, we reverse Winton's convictions. We also reverse Peters' conspiracy conviction, affirm his possession with intent to distribute conviction, and remand his case to the district court for resentencing.

I.

At approximately 2:30 a.m. on April 29, 1991, officers with the Cleveland, Tennessee City Police Department executed a search warrant at a duplex located on Charwood Trail in Cleveland, Tennessee. As the officers forced their way into the apartment, they encountered Winton standing in a nightgown in the first-floor living room. Officer Brian Montgomery, closely followed by three additional officers, immediately ascended the stairs to the sole upstairs bedroom. An officer remained behind with Winton.

Proceeding through the bedroom, past a protruding dresser, and directly into the bathroom, Officer Montgomery observed the water in the toilet swirling as though it had recently been flushed. He found nothing suspicious, however, in the bowl or the surrounding area. Simultaneously, Officers James Walker and Dewey Woody entered the bedroom and secured Peters, who was found lying on the bed clothed only in a pair of shorts. During these first moments, Officer Barry Hughes stood just inside the upstairs bedroom door. The record contains conflicting testimony about Officer Hughes' exact position during the following few minutes.

As Officer Montgomery left the bathroom one to two minutes later, he spied a small plastic bag containing what appeared to be crack cocaine sitting in plain view on a corner of the dresser. A digital pager sat nearby. In a drawer below the cocaine, the officers found a semi-automatic .38 caliber pistol and a fully-loaded magazine in a zippered leather pouch. A search of a pair of Peter's pants found lying on a suitcase next to the bed revealed a roll of cash totalling approximately $988.00. No other contraband was found during a search of the entire residence.

On June 23, a federal grand jury returned a three-count indictment against Winton and Peters. Count One charged Winton and Peters with conspiring to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846. Count Two alleged that Winton and Peters possessed with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Count Three charged that Winton and Peters used and carried a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

The trial, initially scheduled to begin on August 27, 1992, was set for September 28.

At a hearing on an unrelated matter on August 19, counsel for Peters and the Assistant United States Attorney responsible for prosecuting this case discussed whether the defendants would stipulate to the chain of custody and to the chemical analysis of the seized crack cocaine. According to counsel for Peters, when he declined to enter into a stipulation as to these matters, the prosecutor became enraged, called defense counsel several unflattering names, and warned counsel not to "play hardball." Over the following two weeks, counsel for both defendants repeatedly declined the government's request for a stipulation.

On September 22, the government procured a superseding indictment against Winton and Peters. In addition to realleging Counts One through Three of the initial indictment, the superseding indictment also charged Winton and Peters with controlling and making available an enclosure for the purpose of unlawfully storing and using crack cocaine, in violation of 21 U.S.C. § 856(a)(2). Contending that the addition of the fourth count was the result of prosecutorial vindictiveness in response to the defendants' refusal to accept a plea bargain and refusal to stipulate, the defendants filed a motion to dismiss the superseding indictment.

The motion to dismiss was referred to a magistrate judge. After considering testimony presented at a September 28 hearing and reviewing the government's response, the magistrate judge filed a Report and Recommendation suggesting that the defendants' motion be dismissed. In support of his recommendation, the magistrate judge noted that the government had a minimal interest in the defendants' exercise of their right to a full trial and thus had little incentive to act vindictively. He also found that the government added the fourth count to clarify its theory of Winton's role in the conspiracy. Adopting the magistrate judge's report, the district court denied the defendants' motion to dismiss on October 29.

On November 4, the United States filed a motion in limine to exclude extrinsic evidence concerning allegations that Officer Hughes, one of the officers who executed the search warrant, had planted cocaine in two unrelated cases. Indicating that it did not plan to call Officer Hughes as a witness, the United States asserted that introduction of evidence regarding specific instances of prior misconduct by Officer Hughes was barred by Federal Rule of Evidence 608(b). In response, the defendants argued that evidence that Officer Hughes planted cocaine in unrelated cases was admissible under Rule 404(b) to prove the defendants' lack of criminal intent. The district court granted the motion in limine.

The case proceeded to trial on November 16. At the close of the government's proof, the district court granted defendants' motion for judgment of acquittal on Count Two, finding that there was insufficient evidence that Winton and Peters controlled and made available an enclosure for the purpose of unlawfully storing and using crack cocaine. The three remaining counts were submitted to the jury. On November 17, the jury convicted Winton and Peters of the charges alleged in Count One (conspiracy to possess with intent to distribute crack cocaine) and Count Three (possession with intent to distribute crack cocaine), but acquitted the defendants of Count Four (using and carrying a firearm in relation to a drug trafficking offense).

At sentencing, the district court adopted the presentence report's factual findings and application of the Sentencing Guidelines, but found that a two-level increase pursuant to Section 2D1.1(b)(1) for the possession of a firearm during the offense was not warranted. Over the government's objection to the nonapplication of the firearm enhancement, the district court sentenced the defendants to a sixty-three month term of imprisonment to be followed by a four-year term of supervised release. This timely appeal followed.

## II

Initially, Peters and Winton challenge the district court's denial of their motions for a judgment of acquittal on Counts One and Three, claiming that the evidence introduced at trial was insufficient to sustain their con-

victions for conspiracy and possession of crack cocaine with the intent to distribute. In reviewing the denial of a motion for acquittal, this Court has long recognized that we look only to whether after reviewing "the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We are also mindful that "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984)).

■ Despite the strong presumption in favor of sustaining a jury conviction, we are convinced that the United States failed in this case to present sufficient evidence that Winton was in possession of crack cocaine. To sustain the possession with intent to distribute charge, it must be proven that Winton (1) knowingly; (2) possessed a controlled substance; (3) with intent to distribute. *United States v. Clark,* 928 F.2d 733, 736 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991). Here, the record is devoid of evidence that Winton was anything but merely present when the officers executed the search warrant. *See United States v. White,* 932 F.2d 588, 590 (6th Cir.1991) (mere proximity to drugs is not sufficient proof of an intent to distribute under Section 841(a)(1)). There was no evidence that Winton had previously purchased or sold cocaine from the duplex. The government also failed to demonstrate that Winton had been in the upstairs bedroom or had any association with the room's sole occupant, Peters.

Instead, the officers testified that they found Winton standing alone in the first-floor living room. She carried no contraband, made no statements, and took no suspect actions. Furthermore, the officers unearthed no cocaine, drug paraphernalia, or weapons in the downstairs area. The government also failed to link the women's clothing found in the upstairs bedroom to Winton, or to demonstrate that Winton had not been sleeping in the downstairs bedroom. Given the dearth of evidence, we are convinced that no rational trier of fact could have convicted Winton of possession of crack cocaine with the intent to distribute.

■ The government's failure to establish that Winton had any connection with the crack cocaine or with Peters necessarily means that the defendants' conspiracy convictions cannot stand. To prove a conspiracy under 21 U.S.C. § 846, "the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990) (quoting *United States v. Stanley,* 765 F.2d 1224, 1237 (5th Cir.1985)), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 978, 112 L.Ed.2d 1063 (1991). At trial, the government presented no evidence of an agreement between Winton and Peters. Winton's "mere presence in the house does not by itself demonstrate any tacit or mutual understanding between" the defendants. *See Pearce,* 912 F.2d at 162. While proof that Winton and Peters formally agreed to possess the cocaine with the intent to distribute is unnecessary, *United States v. Barrett,* 933 F.2d 355, 359 (6th Cir.1991), the government must present "sufficient evidence to establish [each defendant's] connection [to the conspiracy] beyond a reasonable doubt." *United States v. Christian,* 786 F.2d 203, 211 (6th Cir.1986) (quoting *United States v. Batimana,* 623 F.2d 1366 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980)). Because the United States failed to meet this burden at trial, we find that the evidence in this case is insufficient to support the conspiracy convictions of Winton and Peters.

■ With respect to the possession with intent to distribute charge against Peters, however, we find that the proof was sufficient. Testimony at trial established that the officers found Peters, clothed only in shorts, lying on the bed in the upstairs bedroom. His pants, located on the floor next to the bed, contained almost nine hundred dollars in cash. Officers discovered five grams of crack cocaine and a digital pager sitting in plain view on the dresser a few feet away from him. Expert testimony indicated that the amount of drugs, the currency denomina-

tions, and the presence of a pager were consistent with drug distribution. Viewing all the evidence and the inferences that could be drawn from it in the light most favorable to the government, we conclude that there was sufficient evidence to support a finding that Peters possessed the seized crack cocaine with an intent to distribute it. In light of this conclusion, we address the remaining issues raised by Peters' appeal.

### III

Peters argues that he should have been allowed to introduce testimony regarding allegations that Officer Hughes had planted cocaine on a suspect in an unrelated case. In the motion in limine, it was asserted that introduction of evidence regarding specific instances of misconduct by Officer Hughes was barred by Federal Rule of Evidence 608(b). Rule 608(b) provides, in pertinent part, that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." FED.R.EVID. 608(b).

■ Maintaining that Rule 608(b) was not dispositive, defense counsel countered that evidence of Officer Hughes' other bad acts was admissible under Rule 404(b) to support the inference that Officer Hughes planted the cocaine at issue, and Winton and Peters thus had not committed the charged offenses. Rule 404(b) authorizes the admission of evidence of other wrongs to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED.R.EVID. 404(b). Without specifically articulating which evidentiary rule drove its decision, the district court ordered the evidence excluded. We review this evidentiary ruling under an abuse of discretion standard. *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991).

■ While the record is somewhat unclear as to the basis for the district court's ruling, we decline to substitute our judgment for that of the district court in this case. In ruling on the motion in limine, the district court recognized, "there is nothing in here in [the] present record that would, that anybody could reasonably find that [Officer

Hughes] put those drugs there because Officer Montgomery was there first, followed by [the other officers]." Joint Appendix at 273–274. As this statement illustrates, the district court found that the proffered evidence did not tend "to make the existence of any fact that [was] of consequence to the action more probable or less probable than it would [have been] without the evidence." FED. R.EVID. 401. Accordingly, the defendants failed to meet the threshold requirement for admission under Rule 404(b)—relevance. *Feinman,* 930 F.2d at 499. Given the district court's findings, we conclude that the evidence of Officer Hughes' alleged misconduct was properly excluded.

### IV

■ Peters next claims that the district court abused its discretion by denying the defendant's motion for a continuance. After the close of all evidence, the district court learned that counsel for Peters believed that the court's motion in limine ruling precluded all testimony from Officer Hughes. Given the fact that the court's ruling extended only to testimony about Officer Hughes' alleged prior misconduct, the district court offered Peters an opportunity to recall Officer Hughes to testify regarding the limited subject matter of the search in this case. When defense counsel was unable to locate Officer Hughes, the district court denied defendant's motion to continue.

As this Court has consistently recognized, "[g]ranting or denying a continuance is a matter within the discretion of the district court." *United States v. Frost,* 914 F.2d 756, 764–65 (6th Cir.1990). In determining whether the district court has abused its discretion, "we look for a showing from the defendant of prejudice, i.e., a showing that the continuance would have made relevant witnesses available, or would have added something to the defense." *United States v. Wirsing,* 719 F.2d 859, 866 (6th Cir.1983). Given that district court's motion in limine ruling restricted the scope of Officer Hughes' testimony, as well as the fact that three other officers were subject to extensive cross-examination about the execution of the search warrant, we find that the district court acted within its broad discretion in denying Peters' motion for a continuance.

## V

■ The defendants maintain that the district court erred in denying their motion to dismiss on the grounds of prosecutorial misconduct. Following an evidentiary hearing, the magistrate judge, in a carefully-reasoned opinion, found that the government had rebutted the defendants' prima facie showing of a "realistic likelihood of vindictiveness." *United States v. Andrews,* 633 F.2d 449, 457 (6th Cir.1980) (en banc), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981). We agree. While the prosecutor's comments, if made, were contrary to the standards of professionalism expected of Assistant United States Attorneys, the prosecutor has provided a sufficient explanation for his failure to charge the defendants initially with the fourth count. Accordingly, we find this argument to lack merit.

## VI

We now turn to the appeal by the United States of the sentences imposed on the defendants. Section 2D1.1(b)(1) of the Sentencing Guidelines directs the district court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed during a drug trafficking offense." As the commentary following this section indicates, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 comment. (n. 3). The United States contends that the district court erred in finding that the .38 caliber pistol found in Winton's dresser drawer was not connected to the drug offense. We disagree.

■ Under 18 U.S.C. § 3742, this Court must uphold a sentencing court's factual findings unless they are clearly erroneous. *United States v. Ivery,* 999 F.2d 1043, 1045 (6th Cir.1993) (citing *United States v. Morrison,* 983 F.2d 730 (6th Cir.1993)). Given the district court's opportunity to judge the credibility of the witnesses, we are also required to "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see also United States v. Perez,* 871 F.2d 45, 47 (6th Cir.) (applying Section 3742), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

■ With these guiding principles in mind, we find that the district court's conclusion that Section 2D1.1(b)(1)'s two-level increase did not apply in this case was not clearly erroneous. As the district court noted, its finding was based upon consideration of "the evidence heard at trial as a whole." Joint Appendix at 156, 160. Given our deferential stance with respect to application of the Sentencing Guidelines to the particular facts of a case, we uphold the district court's refusal to apply a two-level upward adjustment to the defendants' base offense levels.

## VII

For these reasons, we reverse Winton's convictions. Peters' conspiracy conviction is also reversed, but his possession conviction is affirmed. Peters' case is remanded to the district court for resentencing consistent with this opinion.