**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard LANZAR, Defendant–**
**Appellant.**

No. 01–6291.

United States Court of Appeals,
Sixth Circuit.

June 11, 2003.

Before GUY, BOGGS, and DAUGHTREY, Circuit Judges.

PER CURIAM.

The defendant, Richard Lanzar, was convicted of conspiracy to distribute more than one kilogram of methamphetamine and was sentenced to 210 months' incarceration. On appeal, he alleges that the district court erred by: (1) denying his motion to suppress his confession to police; (2) admitting evidence of subsequent criminal acts; (3) permitting the allegedly improper impeachment of a witness; (4) limiting the cross-examination of witness Leanne Logan; (5) denying a third motion for continuance before trial; (6) admitting certain audio tapes and transcripts; (7) permitting summary testimony; and (8) miscalculating the amount of methamphetamine for which Lanzar could be sentenced. The defendant also alleges (9) that he was denied pre-trial discovery and (10) that the prosecutor engaged in misconduct during trial. Finding no reversible error, we affirm the judgment of conviction and the district court's sentencing order.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began with the arrest of David Logan outside a Chattanooga Waffle House restaurant after sheriff's deputies observed Logan engage in a drug transaction with Arthur McGinnis. When the deputies stopped Logan and searched his vehicle, they found 22.1 grams of methamphetamine, approximately $3,000 in cash, and two loaded firearms.

During subsequent conversations with law enforcement authorities, Logan initially claimed that he purchased his methamphetamine from Mexican dealers in the Atlanta, Georgia, area. Eventually, however, he confessed that defendant Richard Lanzar was his supplier, that he was introduced to Lanzar by a cousin, that he purchased approximately $200,000 worth of methamphetamine from the defendant in order to sell to his own "clients," including McGinnis, and that he purchased as much as two pounds of methamphetamine from

Lanzar at one time, a purchase that alone would cost approximately $28,000. Logan had kept ledgers in which he recorded the amounts that he bought, what he owed for them, and to whom he sold methamphetamine. Some of those ledgers, later introduced at trial, noted dates on which Logan had met with the defendant to consummate various transactions.

After obtaining the information concerning Lanzar's dealings from David Logan, the authorities began watching the defendant closely. Because Lanzar had promised to look after David's wife, Leanne, and their family in exchange for Logan not mentioning Lanzar's name to the police, a video camera was installed in the Logan home to capture the defendant's visits there. Furthermore, phone calls between Leanne and Lanzar were also taped for review by the authorities, with Leanne's knowledge. Despite those efforts, however, the surveillance failed to document definitively the defendant either using or discussing methamphetamine, although one audio tape did record a conversation in which Leanne attempted to secure $400 worth of some unmentioned substance for two friends, "Susan and Greg." In the tape, Lanzar responded simply, "Okay, let me see what I can do," and "Okay, let me, uh, let me call you back." As a result of the conversation, Leanne did receive a gram of a substance that later tested to be amphetamine, not methamphetamine.

When Lanzar was eventually arrested by police, he was handcuffed, made to lie face down on the ground, and informed of his *Miranda* rights. The defendant indicated that he understood the rights explained to him, but no questioning occurred for three more hours. At that time, Lanzar, without being re-advised of his right to remain silent in the face of governmental interrogation, finally spoke to three law enforcement officials. He

initially told the officers that he had never sold illegal drugs to the Logans but, later in the conversation, did admit to selling methamphetamine to them, although only in quantities of one-eighth of an ounce or less.

At trial, the defense attempted to cast doubt upon the credibility of the Logans. The defendant's strategy also included implying that David Logan's source for the drugs he sold was a Mexican, and not Lanzar, by introducing witnesses who testified that Logan often referred to his methamphetamine as "Mexican Mafia dope." Nevertheless, the jury convicted the defendant of conspiracy to distribute methamphetamine, as charged in the indictment. At sentencing, the district judge accepted the calculations made by the probation office to determine the amount of methamphetamine with which the defendant was connected and sentenced Lanzar at level 36, as a "criminal history category II" offender, to 210 months in federal prison.

## DISCUSSION

### 1. Denial of Motion to Suppress

In the first of his issues on appeal, Lanzar contends that the district court erred in denying his motion to suppress the incriminating statements he made to law enforcement authorities after his arrest. Specifically, he argues that the statements cannot be considered voluntary under the totality of the circumstances, including the fact that he was on the ground, handcuffed, with numerous police weapons pointed at him when advised of his rights. He further claims that he never signed a waiver of his constitutional rights, that he was not interviewed until three hours after the initial reading of the *Miranda* rights, that he was not informed, prior to his confession, of the exact charges brought

against him, and that he was nervous during the interrogation procedure.

■ The parties do not dispute the circumstances surrounding the explanation of rights and the defendant's statements to police. Although Lanzar may well have been nervous while undergoing police interrogation, an examination of the totality of the circumstances leads to the inescapable conclusion that there was no coercive behavior on the part of the law enforcement officials and that, under the facts of this case, the statement given by the defendant was voluntary. The district court did not err in so holding.

## 2. Admission of Alleged Rule 404(b) Evidence of Subsequent Bad Acts

■ Lanzar next contends that the district court erred in allowing the prosecution to introduce tape recordings of telephone conversations between Leanne Logan and the defendant that discussed efforts by Leanne to purchase $400 worth of an unspecified substance for two friends. According to the defendant, admission of such evidence was unduly prejudicial evidence of criminal activity other than that for which the defendant was being tried and, therefore, its admission should result in the overturning of his conviction. The district judge considered the evidence under the standard outlined in *United States v. Merriweather*, 78 F.3d 1070 (6th Cir.1996), and held that the evidence was admissible to show Lanzar's knowledge of the conspiracy to distribute methamphetamine and his intent to engage in all necessary acts to further that conspiracy. This was clearly an appropriate basis for admission under Rule 404(b) of the Federal Rules of Evidence, given that those elements of the offense were "in issue" in this case. If the district court erred in finding that the probative value of the offered evidence outweighed its prejudicial effect, as the defendant now contends, we conclude that the error was, at most, harmless under the unique factual situation presented to the court in this case. The jury had already heard testimony from various witnesses that Lanzar had supplied them with methamphetamine, sometimes in extremely large quantities. Furthermore, the defendant himself admitted after his arrest that he distributed methamphetamine to the Logans. Under such circumstances, we simply cannot conclude that introduction of the evidence of the defendant's connection with another, uncharged crime resulted in a conviction that the prosecution would otherwise not have obtained. We decline to find reversible error on the basis of the alleged violation of Rule 404(b).

## 3. Impeachment of Defense Witness Burton

During trial, defense counsel called Rebecca Burton to the stand in order to offer her opinion that neither David nor Leanne Logan had a reputation for honesty within the community. On cross-examination of Burton, the prosecutor elicited information regarding an accident in February 1999 during which Rick Menard drove a vehicle off the roadway after a night of drinking with Burton and the defendant. After the accident, rather than waiting for the arrival of the police, Lanzar drove Menard to Lanzar's home in his own vehicle, leaving Burton at the scene to answer questions from the authorities. Burton initially told the police that she had no idea who the driver of the disabled vehicle was. Eventually, however, she stated that "Rick Benard," not Rick Menard, was the driver. When pressed by the government, Burton admitted that she had lied to the police regarding the incident, despite her earlier

testimony that she wouldn't lie for the defendant or for anyone else.

■ Lanzar now asserts that introduction of that testimony by Burton improperly put the defendant's own character at issue because the extrinsic evidence offered "had minimal relevance on the issue of whether Burton would lie to protect Lanzar." We disagree, holding that the information elicited from the witness was indeed probative of Burton's own credibility and her willingness to lie to protect her friends, including the defendant. The district court thus properly allowed the challenged testimony to be heard by the jury.

### 4. *Limitation on the Cross–Examination of Leanne Logan*

Lanzar also takes issue with the district court's ruling at trial that the defense could not play the videotapes recorded at the Logans' home in order to show that the defendant made no incriminating comments about his connection with the methamphetamine trade. Challenging the district judge's conclusion that the tapes would constitute inadmissible hearsay evidence, the defendant contends that introduction of any statements made by Lanzar would not be for the purpose of proving the truth of those statements but, rather, to show the lack of discussion of any illegal activity.

We need not determine whether such statements would fall within the definition of inadmissible hearsay testimony because any error in this regard must be considered harmless and, therefore, not a basis for granting relief in this case. *See* Fed. R.Crim.P. 52(a). Despite the restrictions on the defense's proof, the very information sought to be introduced by counsel was offered before the jury by Leanne's own testimony and by the uncontradicted testimony of law enforcement officials involved in the case. Lanzar thus cannot show he was prejudiced in any manner by the trial court's ruling in this regard.

### 5. *Denial of Motion for Continuance*

Lanzar next submits that the district court erred in denying a motion for a continuance filed within one week of the start of trial. We review such a decision only for an abuse of discretion. *See United States v. Peters,* 15 F.3d 540, 545 (6th Cir.1994). "In determining whether the district court has abused its discretion, 'we look for a showing from the defendant of prejudice, i.e., a showing that the continuance would have made relevant witnesses available, or would have added something to the defense.'" *Id.* (quoting *United States v. Wirsing,* 719 F.2d 859, 866 (6th Cir.1983)).

Lanzar has shown no such prejudice, despite the claim by his attorneys that they did not have sufficient time to review all video and audio tapes made by the government and that they were unable to obtain information to prove the value of the defendant's personal assets. Attorney McDougal was first retained by Lanzar in November 2000, and moved for a continuance approximately one month later. The district court granted that motion and rescheduled the defendant's trial for March 2001. Approximately three weeks prior to the new trial date, the court granted a second continuance to McDougal, resetting the trial for April 9, 2001. On March 31, 2001, Lanzar retained attorney Withers as co-counsel, prompting the request for the third postponement of the proceedings. Because McDougal remained as counsel in the case, however, the district judge denied that final motion and began the trial as scheduled.

■ Other than the defendant's general statement that he was prejudiced by the denial of additional preparation time, no

indication of hardship to the defense strategy appears in the record. Counsel claim that they were not given adequate time to review all surveillance material. Yet, one of the defendant's attorneys had been investigating and preparing the case for almost five months by the time of trial. Furthermore, the government's own witnesses conceded that the surveillance tapes failed to capture any action or comment by the defendant specifically related to the methamphetamine distribution conspiracy.

Likewise, the defense was not prejudiced in its attempts to obtain valuations of Lanzar's assets by the district court's denial of a third continuance. The assets at issue—the defendant's car, motorcycle, boats, and home—were familiar to Lanzar and could have been valued at any point during the pretrial preparation period.

### 6. *Admission of Tape Recordings and Transcripts*

Lanzar additionally asserts that the district court erred in admitting into evidence both the government-prepared audio tapes of conversations between Leanne Logan and Lanzar and the transcripts of those tapes, because the government did not offer evidence of an unbroken chain of custody of the tapes and because the district judge did not himself verify the accuracy of the transcripts made from those audio recordings. Of course, the decision whether to admit tape recordings into evidence rests within the sound discretion of the trial court. *See United States v. Robinson,* 707 F.2d 872, 876 (6th Cir.1983). We find no abuse of discretion in this case and, more importantly, no prejudice to the defendant. The agent who installed the recording devices authenticated the audio tapes, as did Leanne Logan, one of the parties to the conversation. Although the government did not establish a complete chain of custody of the tapes, the defense

has failed to point to any portions of the tapes that it contends were inaccurate or that were the result of tampering. Moreover, while the district judge did not make a personal determination of the accuracy of the transcripts offered by the prosecution, the defendant does not identify any specific inaccuracy or inconsistency between the audio tapes and the transcripts of those conversations.

### 7. *Admission of Summary Evidence*

Pursuant to Federal Rule of Evidence 1006, a party may present in summary form "[t]he contents of voluminous ... recordings ... which cannot conveniently be examined in court." On appeal, however, Lanzar insists that the district court erred in this case in allowing a prosecution witness to summarize the information contained on 72 hours of videotape taken of interactions between Leanne Logan and the defendant in Logan's home. According to the defendant's argument, the summary offered into evidence included inadmissible hearsay statements, was not verified for accuracy, and was not provided to Lanzar for examination before trial. Under the authority of *United States v. Bray,* 139 F.3d 1104, 1109 (6th Cir.1998), we find no error. The summary offered was both an accurate representation of the underlying tapes and was not unduly prejudicial. The specific instances of the preparer's testimony that Lanzar contends were either not objective or constituted inadmissible hearsay occurred in response to questions asked by defense counsel on cross-examination. Given these circumstances, we hold that the district court did not abuse its discretion in allowing the summary evidence to be presented to the jury.

### 8. *Calculation of Drug Amount Attributable to the Defendant*

Challenging his sentence, the defendant contends that the district court erred in its

determination of the amount of methamphetamine for which he could be held responsible, 9.9792 kilograms. The defendant maintains that the probation officer's calculation was derived only from undocumented approximations of drug activity by David Logan who, allegedly, was himself an unreliable individual.

We review a "sentencing court's determination of drug quantity for clear error." *United States v. Hough*, 276 F.3d 884, 891 (6th Cir.2002). While it is true in this case that the calculation of the drug amount attributable to the defendant was based upon the memory of an admitted drug addict and felon, it is also true—based on the evidence before the district court—that the extent of Lanzar's methamphetamine dealing far exceeded the quantity of contraband with which he was ultimately connected for sentencing purposes. For example, Logan testified under oath that, during the peak of his purchasing from the defendant, he "was buying about two pounds a week from him, probably, for maybe six months.... Then ... it went down to, like, maybe one pound every month or two...." If we assume that each of those first six months contained only four weeks each, Logan's estimate would mean that he purchased 48 pounds, or 21.8 kilograms, of methamphetamine before "tapering off" to lesser amounts. That total also does not include any of the initial, lesser purchases made by Logan from Lanzar.

The 9.9792 kilogram amount finally attributed to the defendant by the district judge was thus less than half of even that artificially reduced amount. Moreover, pursuant to § 2D1.1(c)(2) of the United States Sentencing Guidelines, the level 36 sentence imposed by the district court would have been appropriate even had Lanzar been responsible for distribution of as little as five kilograms, or 11 pounds, of methamphetamine. In light of the evidence before him, the district judge did not, therefore, commit clear error in arriving at the drug amount used to determine Lanzar's sentence.

### 9. *Discovery Violations*

Lanzar next submits that the prosecution, in violation of the principles set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), failed to provide the defense in a timely manner with exculpatory or impeachment evidence. Our review indicates, however, that the evidence in question—although not disclosed prior to trial—either became known to the defendant during trial or was not exculpatory in nature. In any event, the record reveals that the defendant has failed to establish that he suffered prejudice from the allegedly untimely disclosure of evidence by the prosecution, as required in order to establish a basis for reversal. *See United States v. Bencs*, 28 F.3d 555, 560–61 (6th Cir.1994) (holding that *"Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose," unless prejudice results from the delay itself).

### 10. *Allegations of Prosecutorial Misconduct*

Lanzar also contends that improper comments and actions by the prosecution in this case should result in the reversal of his conviction, citing four instances in the record. We have reviewed each allegation under the standard required by *United States v. Francis*, 170 F.3d 546, 549–50 (6th Cir.1999), and conclude that none of these alleged errors, either singly or in combination, rises to the level of reversible error.

*CONCLUSION*

For the reasons set out above, we find no reversible error, and we therefore AFFIRM the judgment of conviction and the sentence imposed upon the defendant by the district court.