NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0333n.06
No. 20-1630

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jul 13, 2021

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff–Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| ANTHONY MICHAEL ASSFY, | ) | |
| | ) | **OPINION** |
| **Defendant–Appellant.** | ) | |
| | ) | |

Before: SILER, MOORE, and THAPAR, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This case starkly presents the tragedy of the ongoing opioid crisis. In the early morning hours on August 29, 2018, Defendant Anthony Assfy sold what he thought was heroin to Daniel Coon. Later that day, Coon overdosed on methadone and fentanyl and died shortly thereafter. Investigations by local and federal law enforcement identified Assfy as the dealer who last sold narcotics to Coon as well as a dealer involved in several other drug deals. Subsequently, a federal grand jury indicted Assfy on several counts of drug possession and distribution offenses, including for selling Coon the fentanyl that resulted in Coon's death. A jury found Assfy guilty on all counts. Assfy now challenges the sufficiency of the evidence supporting the jury's verdict as well as various rulings that the district court made over the course of his trial. We **AFFIRM**.

## I. BACKGROUND

The events that precipitated this case began late in the evening on August 28, 2018. At around 11:00 p.m., Assfy and Coon engaged in a series of text messages, setting up a drug deal. Coon asked Assfy to deliver $100 worth of narcotics, split into two packages, to Coon's workplace. R. 112 (Trial Tr. Vol. I, Hansen Test. at 168–70) (Page ID #1741–43). At around 1:00 a.m. on August 29, Assfy delivered the drugs to Coon's car. *Id.* at 169–70 (Page ID #1742–43). Several hours later, at approximately 10:00 p.m., the local fire department responded to an emergency call from Coon's residence and found him deceased in his basement from what appeared to be a drug overdose. R. 112 (Trial Tr. Vol. I, Tuinhoff Test. at 124–27) (Page ID #1697–1700). A medical examiner later determined that Coon died eight to twelve hours before emergency services arrived. R. 106 (Trial Tr. Vol. III, Cohle Test. at 25) (Page ID #636). The medical examiner also concluded that an extreme level of fentanyl, coupled with a high level of methadone, caused Coon's death. *Id.* at 20, 28, 31 (Page ID #631, 639, 642).

Law enforcement immediately began investigating Coon's death. Using Coon's cell phone, Detective Warren Hansen identified a likely source of the narcotics that appeared to have caused Coon's death. R. 112 (Trial Tr. Vol. I, Hansen Test. at 162–63) (Page ID #1735–36). Hansen, pretending to be Coon, set up a controlled buy for the next day with the last narcotics dealer with whom Coon texted before his death, requesting the same amount of drugs at the same drop-off location. *Id.* at 171–76 (Page ID #1744–49). On August 30, Assfy showed up at the drop-off location and attempted to leave drugs in what he believed was Coon's car. *Id.* at 177 (Page ID #1750). Law enforcement arrested him on the spot. Subsequent searches after the arrest revealed fentanyl in Assfy's vehicle and fentanyl and crack cocaine on his person, as well as a cell

phone with the text messages that matched the conversations between Assfy and Coon found on Coon's phone. R. 111 (Trial Tr. Vol. II, Hansen Test. at 16) (Page ID #1406); R. 111 (Trial Tr. Vol. II, Giudice Test. at 138, 140) (Page ID #1528, 1530). Although Coon's text messages reflected that he dealt marijuana and had several other sources for acquiring drugs, law enforcement determined that the last narcotic transaction Coon completed before his death was with Assfy. R. 111 (Trial Tr. Vol. II, Hansen Test. at 24–25, 28, 51) (Page ID #1414–15, 1418, 1441). Detective Hansen also interviewed Assfy after the arrest, and Assfy admitted to selling drugs to Coon at least four or five times. R. 112 (Trial Tr. Vol. I, Hansen Test. at 184) (Page ID #1757).

After being released on bond, Assfy continued selling drugs, including three controlled buys to a confidential informant, which resulted in law enforcement arresting him again. R. 111 (Trial Tr. Vol. II, Woollam Test. at 96, 111) (Page ID #1486, 1501). A federal grand jury then indicted Assfy on the following six counts: (1) distribution of fentanyl, which resulted in the death of Coon on August 29, 2018, (2) possession with intent to distribute fentanyl and cocaine base on August 30, 2018, (3) distribution of heroin and cocaine base on October 2, 2018, (4) distribution of heroin and cocaine base on October 25, 2018, (5) distribution of heroin and cocaine base on November 12, 2018, and (6) possession with intent to distribute heroin and cocaine base on November 13, 2018. R. 1 (Indictment at 1–6) (Page ID #1–6). Assfy initially pleaded not guilty and proceeded to trial.

Before trial, Assfy filed a motion in limine, seeking to prohibit one of the government's expert witnesses, Agent Thomas Burns, from testifying. Assfy argued that Agent Burns's testimony focused on discussing common drug-trafficking practices and interpreting "drug lingo"

and that such testimony would not be reliable, nor would it be helpful to the jury. R. 50 (Def.'s Mot. in Lim. at 1–4, 11) (Page ID #149–52, 159). The district court disagreed, noting that the Sixth Circuit recently affirmed the admission of "testimony from Agent Burns on similar topics in another distribution resulting in death case," and that the government would be able to establish the necessary foundation to qualify Agent Burns as an expert witness. R. 67 (Mot. in Lim. Order at 1–3) (Page ID #278–80).

The Friday before the trial was to begin, Assfy attempted to plead guilty to counts three through six of the indictment. The district court denied Assfy's request. The district court determined that "[e]ven if Counts 3 through 6 were somehow removed from the jury by Defendant's guilty plea, the scope of the government's evidentiary proofs on the remaining counts would probably remain about the same," reasoning that Assfy's conduct "could still be relevant, for example, in establishing his intent to distribute" for the remaining counts. R. 77 (Sealed Order at 2) (Page ID #365). The district court also noted that counts three through six contained similar types of conduct as counts one and two, and the conduct at issue was not "highly inflammatory." *Id.* Prior to proceeding with the trial, the district court allowed both parties to state their positions as to whether the court should accept Assfy's partial plea. R. 112 (Trial Tr. Vol. I at 4–10) (Page ID #1577–83). After hearing both parties' arguments, the district adhered to its original order. *Id.* at 9 (Page ID #1582). Assfy proceeded to trial on all six counts.

A jury found Assfy guilty on all counts. R. 85 (Verdict) (Page ID #375). Assfy subsequently filed a motion for acquittal under Federal Rule of Criminal Procedure 29 and a motion for a new trial under Rule 33. The district court denied both motions. The case proceeded to sentencing, and the district court sentenced Assfy to 240 months' imprisonment to be served

concurrently for all six counts. R. 100 (Judgment at 3) (Page ID #540). Assfy timely appealed, challenging the jury's verdict as well as various rulings the district court made over the course of his trial.

## II. ANALYSIS

On appeal, Assfy raises three sets of issues: (A) evidentiary issues, (B) plea issues, and (C) sufficiency-of-proof issues. We address each in turn.

### A. Admission of Expert Testimony

Assfy contends that the district court erred in permitting Agent Burns to offer unreliable testimony concerning the common practices of drug traffickers and opinion testimony about the meaning of certain "plain English" drug-trafficking phrases. We review a district court's decision to admit evidence as expert testimony for an abuse of discretion. *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006).

Under Federal Rule of Evidence 702, a witness with "specialized knowledge" qualified by his or her "knowledge, skill, experience, training, or education" may give "expert" opinion testimony if it "will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. District courts must ensure that any expert testimony is both relevant, *i.e.*, aids the jury in understanding evidence or determining a fact in issue, and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 affords district courts "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. In the law-enforcement context, we routinely hold that testimony concerning the "common practices of the drug trade," including the translation of drug-trafficking vernacular used by other witnesses, is both relevant and reliable expert testimony when given by experienced

law-enforcement agents. *United States v. Maya*, 966 F.3d 493, 505 (6th Cir. 2020) (collecting cases).

The district court did not abuse its discretion in finding that Agent Burns's testimony was both relevant and reliable. Agent Burns's testimony focused on the common practices of narcotics distribution and drug trafficking generally. He also translated several examples of drug-trafficking "code" for the jury, including the terms "boy," "girl," "smoke," and "bars." R. 111 (Trial Tr. Vol. II, Burns Test. at 165–66) (Page ID #1555–56). As mentioned earlier, we consistently have concluded that such translation services are relevant and assist jurors in understanding text messages and other communications exchanged between dealers and their customers, like Assfy and Coon. *See, e.g.*, *United States v. Whyte*, 795 F. App'x 353, 360–61 (6th Cir. 2019) (permitting Agent Burns to offer his expert opinion on the meaning of "drug trafficking jargon" such as "hot," "cut," and "the trap"). Moreover, despite Assfy's contention, Agent Burns's testimony was also reliable: Agent Burns testified to having almost thirty years of Drug Enforcement Administration ("DEA") experience, extensive training in drug investigations, and almost fifteen years of experience working with local law-enforcement teams conducting drug investigations in Michigan. R. 111 (Trial Tr. Vol. II, Burns Test. at 160–62) (Page ID #1550–52). *See Lopez-Medina*, 461 F.3d at 742–43 (holding that agents with seventeen years and six years, respectively, of DEA employment and other experience and training in narcotics investigations were reliable expert witnesses on drug-trafficking practices). Accordingly, the district court did not abuse its discretion in admitting Agent Burns's testimony.

**B. Denial of Partial Guilty Plea**

We review a district court's decision to reject a guilty plea for an abuse of discretion. *United States v. Doggart*, 906 F.3d 506, 509 (6th Cir. 2018). Although criminal defendants do not have an absolute constitutional right to plead guilty, "a district court must provide a sound reason for refusing a plea." *Id.*; *see also Santobello v. New York*, 404 U.S. 257, 262 (1971).

Assfy argues that the district court erred in denying his partial guilty plea. As a result, Assfy contends that the district court allowed the government to present "irrelevant and highly prejudicial evidence" that would have been inadmissible had the court accepted the partial plea. Appellant Br. at 20. We addressed this same argument in a recent unpublished decision, *United States v. Simpson*, 845 F. App'x 403 (6th Cir. 2021). There we held that the district court did not abuse its discretion in rejecting the defendant's request to accept his partial guilty plea. The district court denied the request for three reasons: (1) the admissible evidence would have been the same regardless of whether the defendant pleaded guilty, (2) if the defendant pleaded guilty, he likely would have made "unfavorable admissions" during the plea colloquy that "would presumptively be considered admissible evidence," and (3) the defendant could have stipulated during his opening statement that he was not contesting guilt for certain counts. *Id.* at 409. We concluded that these constituted sound reasons for rejecting the partial plea and upheld the district court's decision. *Id.*

The district court in the instant case provided similar reasons for denying Assfy's request to plead guilty to certain counts. First, the district court stated that it was not "aware of [any] authority that would require it to accept a guilty plea well after the Final Pretrial Conference was held and on the eve of trial." R. 77 (Sealed Order at 2) (Page ID #365). Second, the district court

7

also found that Assfy would not suffer any prejudice from the denial because the government's evidence would likely remain the same, the conduct to which Assfy wanted to plead guilty was similar to the remaining two counts and was not "highly inflammatory," the government could still use the defendant's statements during the plea colloquy as evidence, and Assfy could concede certain facts or charges without pleading guilty. *Id.* at 2–3 (Page ID #365–66); R. 112 (Trial Tr. Vol. I at 9–10) (Page ID #1582–83). Assfy has not identified any binding Sixth Circuit precedent that indicates that the district court's reasons would or would not constitute sound reasons for declining to accept his late partial guilty plea.

Assfy, however, raises one argument that we did not address in *Simpson*. Relying on two out-of-circuit cases, Assfy contends that the district court lacked any discretion to reject his "straight up" guilty plea that did not include a plea agreement because Assfy's plea satisfied the requirements of Federal Rule of Criminal Procedure 11(b). Appellant Br. at 22–25; *In re Vasquez-Ramirez*, 443 F.3d 692, 695–96 (9th Cir. 2006) ("[V]iewing Rules 11(a) and (b) together, it is clear that a court must accept an unconditional guilty plea, so long as the Rule 11(b) requirements are met. The existence or non-existence of a Rule 11(c) plea agreement is irrelevant to the separate issue of how a defendant chooses to plead."); *United States v. Martin*, 528 F.3d 746, 750 (10th Cir. 2008) (citing *Vasquez-Ramirez*, 443 F.3d at 695–96) (doubting that a "district court's desire to avoid confusing the jury or complicating the evidentiary issues was a sufficient basis for rejecting the partial plea," but affirming its decision due to the lack of a factual basis for the plea as required by Rule 11(b)(3)). In *Vasquez-Ramirez*, the Ninth Circuit astutely noted that although many courts cite to *Santobello* for the "'well-settled proposition that a defendant has no absolute right . . . to have his guilty plea accepted,' . . . . *Santobello* was decided before 1975, when Rule

11 was amended to remove the language that explicitly gave courts the ability to reject a guilty plea." *Vasquez-Ramirez*, 443 F.3d at 700 n.9 (alteration in original) (quoting *United States v. Gomez-Gomez*, 822 F.2d 1008, 1010 (11th Cir. 1987). In reaching its holding that district courts must accept an unconditional guilty plea when the plea meets Rule 11(b)'s requirements, the Ninth Circuit also cited *United States v. Maddox*, 48 F.3d 555, 559–60 (D.C. Cir. 1995), where the D.C. Circuit held that "a district court abused its discretion by rejecting a guilty plea without regard for whether the Rule 11(b) requirements had been met." *Vasquez-Ramirez*, 443 F.3d at 700. Taken together, these cases persuasively suggest that the district court in this case abused its discretion by rejecting Assfy's partial guilty plea without ever conducting a hearing or colloquy to ascertain whether his partial guilty plea would satisfy Rule 11(b)'s requirements.

Even if we decide that these out-of-circuit cases persuade us to disagree with our unpublished decision in *Simpson*, we hold that the district court's error was harmless. We agree with the district court's determination that it more than likely would have admitted the evidence concerning counts three through six, regardless of whether Assfy pleaded guilty to those counts because the government still needed to prove Assfy's specific intent to distribute controlled substances for counts one and two. And we have held that subsequent acts of drug distribution, like counts three through six at issue here, may be admissible under Federal Rule of Evidence 404(b) to prove a specific intent offense at issue in a trial, such as the count of possession with intent to distribute to which Assfy did not agree to plead guilty. *See United States v. Barnes*, 822 F.3d 914, 920–24 (6th Cir. 2016); *see also United States v. Johnson*, 27 F.3d 1186, 1192–93 (6th Cir. 1994) (When a defendant does not plead guilty and the government has "the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts

9

evidence may be introduced under Rule 404(b)").[1]  Consequently, we conclude that were we to

hold that, in accordance with *Vasquez-Ramierz*, the district court abused its discretion by rejecting

Assfy's partial guilty plea, that ruling did not materially affect the verdict and therefore was

harmless.  *See Whyte*, 795 F. App'x at 359–60 (discussing the harmless-error rule).[2]

## C.  Sufficiency of Proof

We review de novo challenges to the sufficiency of evidence.  *United States v. Ray*, 803

F.3d 244, 262 (6th Cir. 2015).  However, "[w]hen reviewing for the sufficiency of evidence in

support of a jury verdict, . . . we view the evidence in the light most favorable to the government

and give the government the benefit of all reasonable inferences from the testimony"; we do "not

'weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the

jury.'"  *Id.* (quoting *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)).  Accordingly, if

"*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt," we must uphold the jury's verdict.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Assfy

has not overcome this heavy burden.

Federal law imposes enhanced penalties on persons who knowingly distribute a controlled

substance that then results in a user's death.  21 U.S.C. § 841(b)(1)(C); *Burrage v. United States*,

---

[1]In his opening statement, Assfy's counsel focused exclusively on the "resulting in death" count (count one) but never explicitly conceded counts two through six.  R. 112 (Trial Tr. Vol. I at 118–21) (Page ID #1691–94). Because "[i]t is not entirely clear whether, by reason of his counsel's opening statement to the jury," Assfy "placed in issue the intent to distribute component of the offense with which he [was] charged," the government still had the duty to prove Assfy's specific intent to distribute for count two.  *Johnson*, 27 F.3d at 1193.

[2]Although Assfy does not argue that the rejected partial plea prejudiced his sentencing, we note that any error in rejecting the plea also would be harmless error as it relates to Assfy's sentence because we have held that partial guilty pleas do not entitle a defendant to a reduction in sentence for acceptance of responsibility.  *United States v. Chambers*, 195 F.3d 274, 278–79 (6th Cir. 1999).  Furthermore, the district court considered Assfy's willingness to plead guilty to certain counts when determining his sentence.  R. 108 (Sentencing Hr'g Tr. at 28–29) (Page ID #780–81).  Accordingly, Assfy did not suffer any prejudice during sentencing from the denied partial guilty plea.

571 U.S. 204, 206 (2014). To prove that a particular distribution resulted in a user's death, the government must show that the distribution was "either an independent, sufficient cause of the victim's death or a but-for cause." *United States v. Allen*, 716 F. App'x 447, 450 (6th Cir. 2017). "But-for causation" occurs when the distributed drug "'combines with other factors to produce' death, and death would not have occurred 'without the incremental effect' of the controlled substance." *United States v. Volkman*, 797 F.3d 377, 392 (6th Cir. 2015) (quoting *Burrage*, 571 U.S. at 211).

Sufficient evidence exists to uphold the jury's verdict. A rational jury could have found that the drugs Coon used on August 29 were the drugs that Assfy distributed to Coon earlier that morning. Text messages, video evidence, and other records revealed that Assfy distributed drugs to Coon early in the morning on August 29. R. 111 (Trial Tr. Vol. II, Hansen Test. at 6–14, 24) (Page ID #1396–1404, 1414); R. 112 (Trial Tr. Vol. I, Hansen Test. at 168–77) (Page ID #1741–50). Later that night, after Coon's death, the police, using Coon's cell phone, set up another buy for the very next day with Assfy, asking Assfy to drop off the same amount of drugs at the same location. *Id.* at 171–76 (Page ID #1744–49). When Assfy attempted to drop off the drugs, the police arrested him and found what they later ascertained to be fentanyl and cocaine base in his car and on his person. R. 111 (Trial Tr. Vol. II, Hansen Test. at 16) (Page ID #1406). Although Assfy thought he was selling heroin, a rational jury could find that he was unknowingly selling the much stronger fentanyl. *See United States v. Davis*, 970 F.3d 650, 658 (6th Cir. 2020). Detective Hansen testified that Assfy's drugs were not the same color that heroin normally appears. R. 112 (Trial Tr. Vol. I, Hansen Test. at 187–88) (Page ID #1760–61). And text messages confirmed that Assfy's customers noted that the batch of drugs he was selling at or around the end of August was

a much stronger batch than normal. R. 111 (Trial Tr. Vol. II, Giudice Test. at 154) (Page ID #1544). Furthermore, a rational jury could have found that Coon's death "result[ed] from [his] use of" Assfy's drugs. 21 U.S.C. § 841(b)(1)(C). Both medical experts testified that fentanyl was a sufficient independent cause of Coon's death, and the government's expert found that the methadone found in Coon's system was not by itself the cause of Coon's death. R. 106 (Trial Tr. Vol. III, Cohle Test. at 30–31) (Page ID #641–42); R. 106 (Trial Tr. Vol. III, Judge Test. at 46–47) (Page ID #657–58). Dr. Stephen Cohle, the medical examiner, also testified that Coon would have taken the fentanyl and methadone separately; Coon would have injected the fentanyl and orally consumed the methadone. R. 106 (Trial Tr. Vol. III, Cohle Test. at 22, 35) (Page ID #633, 646). The evidence adequately establishes both requirements of the § 841(b)(1)(C) enhancement. *See United States v. Simer*, 835 F. App'x 60, 65 (6th Cir. 2020) (noting that "'[c]ircumstantial evidence alone is sufficient to sustain a conviction,' as 'such evidence need not remove every reasonable hypothesis except that of guilt'" (alteration in original) (quoting *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994))).

Assfy's sole contention on appeal is that no rational juror could have found that the drugs he sold Coon caused Coon's death. Specifically, he argues that the time that elapsed between the sale and Coon's death plus Coon's known other drug dealings point to some other unidentified dealer as the source of the fentanyl that killed Coon. We typically reject these types of sufficiency arguments as they are "speculative possibilities already rejected by the jury." *Id.* at 65–66; *see also Whyte*, 795 F. App'x at 364. Moreover, the detectives who searched Coon's phone determined that Coon did not deal in narcotics. R. 111 (Trial Tr. Vol. II, Hansen Test. at 51) (Page ID #1441); R. 111 (Trial Tr. Vol. II, Giudice Test. at 159) (Page ID #1549). Detective Hansen

also testified that the last narcotic transaction that Coon completed was with Assfy. R. 111 (Trial Tr. Vol. II, Hansen Test. at 24–25, 44, 51) (Page ID #1414–15, 1434, 1441). Thus, the jury had sufficient evidence from which to conclude that Assfy was the source of the fentanyl that resulted in Coon's death.

Assfy's reliance on our decision in *United States v. Ewing* is not persuasive. 749 F. App'x 317 (6th Cir. 2018). In *Ewing*, the evidence showed that the defendant sold the victim fentanyl laced with heroin but there was no trace of heroin in the victim's system. *Id.* at 329. Because the victim "clearly had access to other illicit substances" in the period before his death, which the government did not attribute to the defendant, and the government did not put forth any evidence to explain the absence of heroin in the victim's blood, we concluded that the jury's verdict regarding the enhancement was not supported by sufficient evidence. *Id.* at 330. Here, however, there is no such "unexplained gap in the evidence." *Id.* at 329. As discussed above, the government put forth enough evidence for a rational juror to conclude that (1) Assfy unknowingly sold fentanyl to Coon, (2) Assfy was the last person to sell narcotics to Coon, and (3) Coon died from a fentanyl overdose. Unlike in *Ewing*, there was no evidence that Assfy sold Coon fentanyl that was laced with a drug that did not appear in his blood. Consequently, we reject Assfy's challenge to the sufficiency of the evidence.

## III. CONCLUSION

For reasons explained above, we **AFFIRM** Assfy's convictions.